# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| WAYNE ALLEN, et al. | * | |
| Plaintiffs | * | |
| v. | * | Civil Action No.: 1:14-cv-04033 |
| ENABLING TECHNOLOGIES CORP. | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### AFFIDAVIT OF PAMELA NOVAK-PATRICK

I, Pamela Novak-Patrick, am over the age of eighteen and am competent to testify in these proceedings as follows:

1. I am the Finance Manager and Human Resources Coordinator at Enabling Technologies, Corp. ("ETC").

2. I have worked at ETC for 8.5 years and I am familiar with Wayne Allen and Howard Cable, the Plaintiffs in the above-referenced matter. I am also familiar with James Gilmer.

3. On July 20, 2009, ETC hired James Gilmer as a Support Manager.

4. Mr. Cable worked for ETC as a Support Engineer from December 14, 2009 to August 2014.

5. Mr. Cable's starting base salary was $63,000. Mr. Cable's salary increased to $66,780 on or about April 15, 2011, increased to $70,787 on or about April 15, 2012, and increased to $74,326.35 on or about October 15, 2013.

6. Mr. Cable also received compensation of $300 - $400 in addition to his salary for each week in which he was on-call.

7. Additionally, ETC provided Mr. Cable health, dental, and vision insurance, a $50,000 life insurance policy, paid short-term and long-term disability coverage, 401K benefits, paid vacation based upon years of service, two personal days, an additional vacation day on Mr. Cable's birthday, and up to five sick days per year.

8. ETC provided Mr. Cable reimbursement of business expenses, including $90 per month for cell phone service and high speed internet service in Mr. Cable's home. ETC also provided Mr. Cable with a laptop.

9. Mr. Cable was scheduled to work two days each week in ETC's office, located at 12226 Long Green Pike, Glen Arm, Maryland 21057. Mr. Cable worked the rest of the week remotely from his home office. Mr. Cable often left ETC's office early and would occasionally boast about how he would go home to relax at his pool.

10. Mr. Allen was employed by ETC as a Support Engineer from September 4, 2012 to November 28, 2014.

11. Mr. Allen's starting base salary was $52,500, which increased to $55,125 on or about October 15, 2013.

12. In addition to his salary, Mr. Allen received premium compensation of $350 - $400 each week in which he was on-call.

13. ETC provided Mr. Allen with health, dental, and vision insurance, a $50,000 life insurance policy, paid short-term and long-term disability coverage, 401K benefits, paid vacation based upon years of service, two personal days, an additional vacation day on Mr. Allen's birthday, and up to five sick days per year.

14. Additionally, ETC provided Mr. Allen with reimbursement of business expenses, including $90 per month for cell phone service and $45 per month for high speed internet service in Mr. Allen's home. ETC also provided Mr. Allen with a laptop.

15. The resumes of current and former ETC employees attached hereto, are a true and authentic copy of the original resumes provided to ETC by ETC's current and former employees, and (a) were created at or near the time of the act, event, or condition giving rise thereto (b) were created by a person with knowledge, (c) were kept in the course of a regularly conducted business activity, and (d) it was ETC's practice to make and keep such a record.

16. The On-Call schedules attached hereto, are true and authentic copy of the original schedules for Plaintiffs, and (a) were created at or near the time of the act, event, or condition giving rise thereto (b) were created by a person with knowledge, (c) were kept in the course of a regularly conducted business activity, and (d) it was ETC's practice to make and keep such a record.

17. The Employment Agreements attached hereto, are true and authentic copy of such Employment Agreements, and (a) were created at or near the time of the act, event, or condition giving rise thereto (b) were created by a person with knowledge, (c) were kept in the course of a regularly conducted business activity, and (d) it was ETC's practice to make and keep such a record.

18. The Employment Offer Letters attached hereto, are true and authentic copy of such Offer Letters, and (a) were created at or near the time of the act, event, or condition giving rise thereto (b) were created by a person with knowledge, (c) were kept in the course of a regularly conducted business activity, and (d) it was ETC's practice to make and keep such a record.

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true.

*Pamela Novak-Patrick*
Pamela Novak-Patrick