IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYNE ALLEN <u>et al.</u>          *
                                  *
     Plaintiffs                   *
v.                                *
                                  *   Civil Action No. WMN-14-4033
ENABLING TECHNOLOGIES CORP.       *
                                  *
     Defendant                    *

  *     *     *     *     *     *     *     *     *     *     *     *     *     *     *

<u>**MEMORANDUM**</u>

On December 30, 2014, Plaintiffs Wayne Allen and Howard Cable filed a Complaint against their former employer, Defendant Enabling Technologies Corp.  ECF No. 1.  Plaintiffs' three-Count Complaint alleges violations of 1) the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, <u>et seq.</u>; 2) the Maryland Wage and Hour Law (MWHL), Md. Code Ann., Lab & Empl. § 3-401 <u>et seq.</u>, and 3) the Maryland Wage Payment and Collection Law (MWPCL), Md. Code Ann., Lab & Empl. § 3-501 <u>et seq.</u>  <u>Id.</u>  Now pending before the Court is Plaintiffs' Motion for Summary Judgment,[1] ECF No. 27; Defendant's Cross-Motion for Summary Judgment, ECF No. 33; Defendant's Motion for Leave to File Amended Answer, ECF No. 31; Plaintiffs' Motion to Strike, ECF No. 41; and Defendant's Motion for Leave to File Reply Memorandum in Excess of Twenty-Five Pages, ECF No. 42.  Upon a review of the pleadings and the

---

[1] Plaintiffs move "for summary judgment on their FLSA and MWHL claims only."  ECF No. 27-3 at 1 n.1.

applicable case law, the Court determines that no hearing is necessary.  Local Rule 105.6.  For the reasons set forth below, the Court will deny Plaintiffs' Motion for Summary Judgment, deny Defendant's Cross-Motion for Summary Judgment, grant Defendant's Motion for Leave to File Amended Answer, deny Plaintiffs' Motion to Strike, and grant Defendant's Motion for Leave to File Reply Memorandum in Excess of Twenty-Five Pages.

## I. Background

Defendant Enabling Technology Corp. (ETC) is a Maryland corporation with its principle place of business in Glen Arm, Maryland.  Defendant specializes in information technology (IT) services.  According to ETC's founder and President, Bill Vollerthum, the corporation provides unified communications and unified messaging solutions,[2] including information technology infrastructure, objective strategic assessment, design, planning, and implementation to a variety of clients throughout the United States.  Vollerthum Affidavit ¶ 3, ECF No. 33-4. Defendant employs Support Engineers, also referred to as Messaging Engineers, Unified Messaging Engineers, and Unified Communications Engineers, to provide customer support and update client IT systems.  ECF No. 33-2 at 5.  Support Engineers

---

[2] Unified communications and unified messaging solutions refers to the integration of communication services, including instant messaging, e-mail, telephone, and web and video conferencing. Dean Affidavit ¶ 6, ECF No. 33-5.

generally have a technical background in the IT, software, and/or computer science fields.  Vollerthum Affidavit ¶ 6, ECF No. 33-4.

Plaintiffs worked for Defendant as Messaging Engineers. ECF No. 27-3 at 1.[3]  Plaintiff Wayne Allen worked for Defendant from September 4, 2012, until approximately December 1, 2014. ECF No. 1 ¶ 8.  Allen worked remotely from his home in Florida. Allen's base salary was $52,500 and that salary increased to approximately $55,125 in October of 2013.  ECF No. 33-8 ¶ 11. On or about November 28, 2014, Allen was terminated.  ECF No. 33-4 ¶ 20.  Plaintiff Howard Cable worked for Defendant from December 14, 2009, until August of 2014.  ECF No. 1 ¶ 8; ECF No. 33-2 at 10.  Cable worked in Defendant's Maryland office two days a week, and worked the rest of the week remotely from his home office.  ECF No. 33-8 ¶ 9.  Cable's base salary was $63,000 and increased to $66,780 in April of 2011, $70,787 in April of 2012, and $74,326.35 in October of 2013.  ECF No. 33-8 ¶ 5.  On August 13, 2014, Cable was terminated.  ECF No. 33-4 ¶ 16.

---

[3] The parties dispute the type of work Plaintiffs performed in their positions as Messaging Engineers, as discussed herein.  It is undisputed; however, that Plaintiffs' work was governed by IT Management Software Systems, which sent Plaintiffs a notification when an ETC customer had a support request.  Cable worked almost exclusively with one client, First Quality Enterprises, which used a unique, proprietary ticketing system called Big Web.  Allen used Defendant's more general system, known as Kaseya.

3

The regular work schedule for ETC employees such as Plaintiffs was Monday through Friday from 8:30 a.m. until 5:00 p.m.  ECF No. 33-2 at 7.  Once every four to six weeks, ETC employees took turns working on call in addition to their regular schedule.  During an on call week, employees were obligated to respond to work requests from 5:00 p.m. to 8:30 a.m. Monday through Thursday and from 5:00 p.m. Friday through 8:30 a.m. Monday.  In order to perform on call duties, ETC employees needed ready access to their cell phone and email.  ECF No. 33-4 ¶ 8.  As extra compensation for on call weeks, employees received a lump sum payment of $350-$400.  ECF No. 1 ¶ 9.

The crux of Plaintiffs' Complaint is that, pursuant to the FLSA and MWHL, Defendant was obligated to compensate Plaintiffs at the overtime rate of one-and-one-half times their regular rate for all hours worked in excess of forty hours per week, and that Defendant's failure to do so was willful and intentional, and was not in good faith.  Plaintiffs request unpaid overtime wages under the FLSA and MWHL, liquidated damages in an amount equal to their unpaid overtime wages under the FLSA and MWHL, treble damages under the MWPCL, interest, costs, and attorney's fees.

The following two issues are pertinent to the parties' motions for summary judgment: 1) whether Plaintiffs were

properly classified as exempt from the FLSA's overtime pay
requirements pursuant to exemptions found at 29 U.S.C. §
213(a)(1) and/or 29 U.S.C. § 213(a)(17); and 2) if Plaintiffs
were misclassified, how many hours of overtime Plaintiffs worked
during their tenures at ETC.[4]  As to classification, Plaintiffs
argue that they did not perform the type of high level work that
is exempt from the overtime pay requirements of the FLSA and
MWHL.  In response, Defendant argues that due to Plaintiffs'
salaries, skill levels, and primary duties, they were properly
classified as exempt employees, ineligible for overtime pay.  As
to the number of overtime hours worked, Plaintiffs claim that
they worked an average of 60 hours per week, 50.5 hours during
regular work weeks and 92 hours during on call weeks.  ECF No.
27-3 ¶ 9.  In response, Defendant argues that Plaintiffs worked
40 hours during regular work weeks and 50 to 60 hours during on
call weeks.  ECF No. 33-2 at 9.

## II. Discussion

### A. Defendant's Motion for Leave to File Amended Answer

On February 29, 2016, Plaintiffs filed a Motion for Summary
Judgment, in which they asserted that by "failing to plead the
'computer professional' defense as part of its Answer or Amended
Answer, Defendant has waived its right to raise the affirmative

---

[4] Defendant did not keep time records during Plaintiffs'
employment.  ECF No. 33-2 at 9.

defense that Plaintiffs were exempt computer professionals."
ECF No. 27-3 at 6.  In response to that motion, on March 11,
2016, Defendant filed a Motion for Leave to File Amended Answer
pursuant to Federal Rule of Civil Procedure[5] 15(a)(2).[6]  ECF No.
31.  Defendant asserts that Plaintiffs were properly notified
that it planned to raise an FLSA exemption defense and that,
assuming arguendo that the exemption defense was not properly
raised, Plaintiffs cannot show prejudice or unfair surprise
which would support a finding of waiver.  ECF No. 31-1 at 7.

According to Rule 8(b)(1)(A), "[i]n responding to a
pleading, a party must: state in short and plain terms its
defenses to each claim asserted against it."  Additionally,
under Rule 8(c)(1), "[i]n responding to a pleading, a party must
affirmatively state any avoidance or affirmative defense."  A
defendant's failure to sufficiently plead an affirmative defense
may result in the waiver of such defense.  RCSH Operations, LLC
v. Third Crystal Park Associates LP, 115 Fed. App'x 621, 629
(4th Cir. 2004).  "[T]he application of an exemption under the

---

[5] Unless otherwise noted, all references to rules hereafter refer
to the Federal Rules of Civil Procedure.

[6] In order to remedy the failure to plead an affirmative defense,
a defendant may move for leave to amend pursuant to Rule
15(a)(2).  According to Rule 15(a)(2), "a party may amend its
pleading only with the opposing party's written consent or the
court's leave.  The court should freely give leave when justice
so requires."

Fair Labor Standards Act is an affirmative defense." <u>Corning</u>

<u>Glass Works v. Brennan</u>, 417 U.S. 188, 196-197 (1974).  Under

Affirmative Defenses, Defendant's Amended Answer[7] asserts:

> 20. The Complaint in its entirety fails to state a
> claim upon which relief may be granted.
>
> 21.  Plaintiffs' claims are barred by the statute of
> limitations.
>
> 22. All actions taken by the Defendant with respect to
> the Plaintiffs were taken completely in good faith
> with high regard for the rights of the Plaintiffs.
>
> 23. Plaintiffs were paid in accordance with the law.

ECF No. 12 at 3.

In regards to paragraph 23, Plaintiffs assert that this

"vague, general denial gave [them] no insight as to whether

Defendant would assert a claim for exemption in its defense."

ECF No. 32 at 2.  With regards to the same paragraph, Defendant

asserts that Plaintiffs were properly notified of its contention

that they were exempt from the overtime pay provisions of the

FLSA.  ECF No. 31-1 at 6-7.  In support of this contention,

Defendant cites <u>Hanzlik v. Birach</u>, a case where the court, in

considering the affirmative defense that the plaintiff "was

exempt from the FLSA's overtime requirements," found that the

plaintiff was adequately put on notice that the defendant

---

[7] Defendant filed an Answer on February 27, 2015.  ECF No. 8.  On
April 17, 2015, Defendant filed an Amended Answer.  ECF No. 12.
The Affirmative Defense section of the Answer was not revised in
the Amended Answer.

intended to prove that the plaintiff was not covered by the

FLSA.   Civil No. JCC-09-221, 2009 WL 2147845, at *2-4 (E.D. Va.

July 14, 2009).   The court opined that "[f]orcing a defendant to

cite each and every applicable statute and regulation that may

support an FLSA exemption at the answer stage would be contrary

to the spirit of Rule 8" and that "[t]he matter can be fleshed

out through discovery."  Id. at 4.   Defendant's assertion that

"Plaintiffs were paid in accordance with the law" is another way

of saying "Plaintiffs were exempt from the FLSA."   This Court

agrees with the court's above-cited sentiment in Hanzlik.

The Court need not decide whether Defendant sufficiently

pled an FLSA exemption, however, because Plaintiffs have not

demonstrated prejudice due to Defendant's alleged pleading

failure.[8]  "Failure to raise an affirmative defense until the

summary judgment phase of a case does not waive the defendant's

ability to assert the defense absent a showing of prejudice to

the plaintiff."  Cornell v. Council of Unit Owners Hawaiian

Vill. Condominiums, Inc., 983 F. Supp. 640, 642-643 (D. Md.

1997).   Plaintiffs cannot show prejudice because the primary

issue focused on throughout discovery was whether they were

properly classified as exempt employees under 29 U.S.C. §

---

[8] Plaintiffs failed to respond to Defendant's assertion that they
have not been prejudiced, and instead merely allege, without
adequate support, that Defendant intentionally chose not to
plead the relevant affirmative defenses.   ECF No. 32 at 2.

213(a)(1) and 29 U.S.C. § 213(a)(17).  See ECF No. 31-1 at 7-16.
Further, Plaintiffs' Motion for Summary Judgment sufficiently
contemplates and responds to those exemptions.

The applicability of an exemption is the principle issue in
this matter; whether or not an exemption applies governs all
other issues raised in the parties' motions for summary
judgment.  Plaintiffs' attempt to avoid the threshold issue and
suggestion that form should prevail over substance is contrary
to the federal policy of resolving cases on the merits.  Conley
v. Gibson, 355 U.S. 41, 48 (1957).  The Court will grant
Defendant's motion, and allow Defendant to amend its Amended
Answer in order to expressly state its affirmative defense that
Plaintiffs were properly classified as exempt employees pursuant
to 29 U.S.C. § 213(a)(1) and/or 29 U.S.C. § 213(a)(17).

B. Plaintiffs' Motion to Strike and Defendant's Motion for Leave
to File Reply in Excess of Twenty-Five Pages

On June 13, 2016, Defendant filed its Reply to Plaintiffs'
Opposition to Cross-Motion for Summary Judgment.  ECF No. 40.
On June 23, 2016, Plaintiffs filed a Motion to Strike
Defendant's Reply.  ECF No. 41.  That motion is premised on
Defendant's failure to comply with the page limit requirement of
Local Rule 105.3.  Local Rule 105.3 states "reply memoranda
shall not exceed twenty (20) pages, exclusive of (a) affidavits
and exhibits, (b) table of contents and citations, and (c)

addenda containing statutes, rules, regulations and similar
material." Defendant's Reply memorandum is forty-nine pages
long. In the Motion to Strike, Plaintiffs request that the
Court strike Defendant's entire Reply or strike pages 26 through
49 pursuant to Local Rule 105.3 and Exhibits 12 and 15 pursuant
to Rule 6(c)(2). ECF No. 41 at 1. On June 27, 2016, Defendant
filed a motion for leave, requesting that the Court accept the
Reply memorandum as filed, or grant Defendant leave to file an
amended memorandum. ECF No. 42 at 4. A draft thirty-nine page
amended Reply memorandum was attached as Exhibit 1. ECF No. 42-
1.

The purpose of a reply is to address counter-points made in
an opposition. Fontell v. McGeo UFCW Local 1994, Civil No. AW-
09-2526, 2010 WL 3086498, at *14 (D. Md. Aug. 6, 2010). In
general, a reply memorandum should be focused, direct, and
include no new argument. Defendant's Reply is over the page
limit as specified by the Local Rules, but it does not exceed
the scope of the issues addressed in Plaintiffs' Opposition.
Defendant promptly moved to remedy its error, seeking leave to
file in excess of the Court's page limitations. The Court finds
that Plaintiffs were not prejudiced by Defendant's failure to
comply with Local Rule 105.3, and therefore, deny their request
to strike pages 26-49.

As to the challenged exhibits, Plaintiffs claim they would be unfairly prejudiced if the Court considers Exhibit 12, Second Supplemental Affidavit of William Fannin, and Exhibit 15, Supplemental Affidavit of Christopher L. Dean.  Plaintiffs cite Rule 6(c)(2), which states "[a]ny affidavit supporting a motion must be served with the motion."  Plaintiffs' claim that because they will not have a chance to respond to these supplemental affidavits, they should be stricken.  The Court disagrees; nothing in the Federal Rules of Civil Procedure forbids a movant from making supplemental record submissions in a reply brief to rebut specific arguments raised in an opposition.  See Baugh v. City of Milwaukee, 823 F. Supp. 1452, 1457 (E.D. Wis. 1993) ("where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers- both briefs and affidavits- may properly address those issues").  Exhibits 12 and 15 of Defendant's Reply merely respond to matters placed in issue by Plaintiffs' Opposition; therefore, Plaintiffs' Motion to Strike will be denied.

Again, this Court will not allow form to prevail over substance.  This matter will not be resolved through the instant motions, and, should it proceed to trial, will be resolved as a bench trial.  Although Defendant's Reply memorandum is unduly long, the lengthy discussion of facts and law during motions

practice will ultimately benefit the parties and the Court.  As such, Defendant's Motion for Leave to File Reply in Excess of Twenty-Five Pages will be granted, and the Amended Reply, ECF No. 42-1, will be accepted as filed.

C. Motions for Summary Judgment

1. Legal Standard

Summary judgment is appropriate if the record before the court "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it might "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether there is a genuine issue of material fact, the court "views all facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party." Housley v. Holquist, 879 F. Supp. 2d 472, 479 (D. Md. 2011).

When both parties file motions for summary judgment, the court applies the same standards of review.  ITCO Corp. v. Michelin Tire Corp., Commercial Div., 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment—even where ... both parties have filed cross motions for summary judgment.").  The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each

case, whether a judgment may be entered in accordance with the Rule 56 standard." Towne Mgmt. Corp. v. Hartford Accident and Indem. Co., 627 F. Supp. 170, 172 (D. Md. 1985).

In a non-jury trial, the judge is the ultimate trier of fact. In such cases, the court may grant summary judgment where a trial would not enhance the court's ability to draw inferences and conclusions. In re Placid Oil Co., 932 F.2d 394, 398 (5th Cir. 1991). The district court, however, "must be aware that assessments of credibility come into sharper focus once live witnesses are heard." Id.

## 2. Analysis

The FLSA requires employers to pay their employees at least the federal minimum wage for all hours worked and overtime pay at time and one-half the regular rate of pay for all hours worked over 40 hours. 29 U.S.C. §§ 206, 207. "The MWHL similarly requires that employers pay the applicable minimum wage to their employees and, [in §§ 3-415 and 3-420 of the Labor and Employment Article], that they pay an overtime wage of at least 1.5 times the usual hourly wage for each hour worked in excess of forty hours per week." McFeeley v. Jackson St. Entm't, LLC, 47 F. Supp. 3d 260, 275-276 (D. Md. 2014) (internal quotations omitted). The MWHL is "the State parallel" to the FLSA, Friolo v. Frankel, 819 A.2d 354, 361 (Md. 2003), and the requirements of that provision "mirror those of the federal

13

law." Turner v. Human Genome Sci., Inc., 292 F. Supp. 2d 738,
744 (D. Md. 2003). Thus Plaintiffs' claim under the MWHL
"stands or falls on the success of their claim under the FLSA."
Id.

The FLSA's overtime pay provisions are subject to several
exemptions. See 29 U.S.C. § 213. "In the Fourth Circuit, an
employer bears the burden of proving, 'by clear and convincing
evidence' that an employee falls within the [] exception."
Calderon v. GEICO Gen. Ins. Co., 917 F. Supp. 2d 428, 435 (D.
Md. 2012), aff'd, 809 F.3d 111 (4th Cir. 2015) (quoting Desmond
v. PNGI Charles Town Gaming, L.L.C., 564 F.3d 688, 691 (4th Cir.
2009)). "FLSA exemptions are to be 'narrowly construed against
the employers seeking to assert them and their application
limited to those establishments plainly and unmistakably within
the exemptions' terms and spirit." Desmond, 564 F.3d at 692
(quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392
(1960)). As relevant to this case, the FLSA exempts certain
computer professionals. Defendant asserts that Plaintiffs were
exempt under the computer professional exemptions of 29 U.S.C. §
213(a)(1) and 29 U.S.C. § 213(a)(17).

Section 213(a)(1) exempts employees employed in a "bona
fide executive, administrative, or professional capacity." This
exemption includes professionals who are "computer employees,"
and the regulations governing those employees are found within

14

29 C.F.R. §§ 541.400-541.402.  Unlike the broader exemption in

Section 213(a)(1), Section 213(a)(17) applies specifically to

computer systems analysts, computer programmers, software

engineers, or other similarly skilled workers, who meet certain

additional requirements.[9]  The difference between these two

exemptions is best explained in 29 C.F.R. § 541.400, which

states:

> (a) Computer systems analysts, computer programmers,
> software engineers or other similarly skilled workers
> in the computer field are eligible for exemption as
> professionals under section 13(a)(1) of the Act and
> under section 13(a)(17) of the Act.  Because job
> titles vary widely and change quickly in the computer
> industry, job titles are not determinative of the
> applicability of this exemption.
>
> (b) The section 13(a)(1) exemption applies to any
> computer employee compensated on a salary or fee basis
> at a rate of not less than $455 per week ... and the
> section 13(a)(17) exemption applies to any computer
> employee compensated on an hourly basis at a rate not
> less than $27.63 an hour.[10]

29 C.F.R. § 541.400.  This provision of the Code of Federal

Regulations was updated May 23, 2016, apparently, to clear up

some of the trouble litigants and courts shared in interpreting

the exemptions for computer professionals.  The parties in this

case have spent much time debating whether Section 213(a)(17)

---

[9] The legislative history behind these two exemptions was
compiled by the court in Pellerin v. Xspedius Mgmt. Co. of
Shreveport L.L.C., 432 F. Supp. 2d 657 (W.D. La. 2006), and will
not be repeated here.

[10] 29 C.F.R. § 541.400(b) is effective until December 1, 2016.

applies to salaried employees.[11]  The Court finds that it does,

in congruence with the memorandum opinion of the United States

Department of Labor.  See ECF No. 40-5 ("Section 13(a)(17) by

its own terms does not exclude employees paid on the traditional

salary basis from the section 13(a)(17) exemption, but rather

states that in the event that someone is paid on an hourly

basis, that employee must be paid not less than $27.63 per hour

to be exempt as a computer professional.").[12]

As to the merits, the parties spend the majority of their

respective motions arguing over what constituted each

Plaintiff's primary duty.  An employee's primary duty is the

"principle, main, major or most important duty that the employee

performs."  29 C.F.R. § 541.700(a).  Both computer professional

exemptions apply only to computer employees whose primary duty

consists of:

> (1) The application of systems analysis techniques and
> procedures, including consulting with users, to
> determine hardware, software or system functional
> specifications;

---

[11] Plaintiffs' Complaint specifically states "Defendant paid
Plaintiffs on a salary basis."  ECF No. 1 ¶ 9.

[12] The Court recognizes that "unlike in section 13(a)(1), in
section 13(a)(17), Congress granted no authority to the
Secretary of Labor to define or delimit the computer employee
exemption."  Defining and Delimiting the Exemptions for
Executive, Administrative, Professional, Outside Sales and
Computer Employees, 69 FR 22122-01, 2014 WL 865626, (Apr. 23,
2004).

(2) The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

(3) The design, documentation, testing, creation or modification of computer programs related to machine operating systems; or

(4) A combination of the aforementioned duties, the performance of which requires the same level of skills.

29 C.F.R. § 541.400; 29 U.S.C. § 213(a)(17).  In determining whether a computer professional exemption applies, "courts must rely on litigants to provide such evidence and to explain the common understanding of the technical terms used in the regulation."  Bohn v. Park City Grp., Inc., 94 F.3d 1457, 1464 (10th Cir. 1996).

Plaintiffs argue that they spent a majority of their time performing low-level customer support, similar to the work of a help-desk employee, and that they did not perform the duties contemplated by the exemption, nor did they perform duties which required the same level of skill.  In general, employees who provide basic assistance with computer problems are not exempt from the FLSA's overtime provisions.  See, e.g., Hunter v. Sprint Corp., 453 F. Supp. 2d 44, 52 (D.D.C. 2006) (denying summary judgment on the employer's exemption claim because the record indicated that the employee "functioned as a technically proficient help-desk employee whose primary duty was customer

17

service").  At Allen's deposition, he explained "my primary

duties were what I like to call help and how to, which is really

telling someone how to use the desktop client that was connected

to the server, and most of those were fairly quick to resolve.

Sometimes it was a matter of just sending somebody a link which

contained steps or instructions."  Allen Dep. 70, ECF No. 27-11.

As articulated by James Gilmer, Plaintiffs' immediate supervisor

for the majority of their employment, "Mr. Cable and Mr. Allen

were hired to perform standard help desk troubleshooting

services for ETC clients."  Gilmer Supp. Affidavit ¶ 5, ECF No.

27-5.  According to Gilmer, Plaintiffs were "not doing any

technical work" but rather, were "just connecting people, like a

traffic person."  Gilmer Dep. 189, ECF No. 27-7.[13]

    As evidence of typical troubleshooting duties, Plaintiffs'

Exhibit 8, ECF No. 27-14, contains a snapshot of work orders

from First Quality Enterprises (FQE), the primary client Cable

worked with throughout his employment.  Those work orders

reflect Cable's performance of rudimentary tasks such as

changing an email password, adding and removing names from

directories, setting up voicemail, and the like, none of which

---

[13] This deposition was taken on February 10, 2016, and was
provided as a courtesy copy to the Court, as part of Exhibit 3
to Plaintiffs' motion.  Exhibit 3, ECF No. 27-7, as shown on the
Court's electronic docket, includes the February 8th deposition
transcript of James Gilmer but not the February 10th deposition
transcript.  Plaintiffs shall correct this error.

typify the degree of skill contemplated in the computer professional exemptions.  See ECF No. 27-14.  In response to Plaintiffs' Exhibit 8, Defendant's Exhibit 18, ECF No. 33-21, supplies 155 pages of additional work orders from FQE.  Upon examination, Plaintiffs claim that the orders reflected in the tickets presented by Defendant are similarly basic.  Plaintiffs state, that for example, the following actions were requested within the first three pages:

> create new email accounts, expand email access, create new login IDs and passwords, [] change the name of an employee in a directory, grant someone access to email and remote access to files, fix a phone that makes a busy signal after dialing a number but is actually ringing on the receiver's end, grant a user the ability to send emails with larger files attached, install a simple instant messaging program on a customer's computer, and remove terminated former employees from an electronic directory.

ECF No. 37 at 13.

In direct contradiction to Plaintiffs' assertions and evidence, Defendant claims that Plaintiffs' work was similar to the work of a computer systems analyst.  Defendant argues that Plaintiffs' primary duties consisted of the application of systems analysis techniques, including consultation with users to determine hardware, software, and/or system functional specifications.[14]  Defendant refutes Plaintiffs assertion that

---

[14] The Court notes that through much of the pleadings, both parties merely deny or assert the statutory language.

they were low level help-desk employees, stating that many of
its customers, including FQE, had their own help-desk teams to
handle low-level support issues.

To support the claim that Plaintiffs were highly skilled
computer professionals, Defendant has introduced a tier system
that demonstrates different levels of work within the IT
industry.  According to Defense expert, Christopher L. Dean,
"[u]nder the multi-tiered system, Tier 1 is the initial level of
support.  It constitutes basic level support, during which the
support representative obtained information from the customer by
analyzing the problem and attempting to determine the underlying
issue.  Tier 2 support is an intermediate level, which requires
technicians with more training knowledge and experience. Such
support involves advanced technical troubleshooting and
analysis.  Tier 3 is the highest level of support in the three-
tiered support system.  Tier 3 technicians are responsible for
handling the most advanced support issues. Tier 3 technicians
are considered experts in their fields."  Dean Affidavit ¶ 8,
ECF No. 33-5.  Dean used this model to analyze FQE work orders,
and found that the vast majority of Cable's work constituted
Tier 2 issues.  Id. at ¶ 24.  Specifically, Dean found that 22%
of the tickets constituted Tier 1 work while 77% of the tickets
constituted Tier 2 work.  Id.  Dean further concluded that Allen
performed Tier 2 work.  Id. ¶23.  As a result, Dean proffers

that Plaintiffs' work was similar to that of a computer systems analyst in that Plaintiffs "consult with managers of customers to determine the role of the IT system of the organization," "devise ways to add new functionally to existing computer systems" "conduct testing to ensure the systems work []as expected, and train the system's end users and write instructions to assist their customers."  Id. ¶ 11.

The parties' positions on the issue of Plaintiffs' primary duties are not reconcilable.  Both parties attempt to justify these differences.  Plaintiffs accuse Defendant of relying on "irrelevant evidence such as the Plaintiffs' job titles and erstwhile job descriptions, Plaintiffs' resumes, and the testimony of third-party witnesses (both fact and expert) who have no firsthand knowledge of the work Plaintiffs performed." ECF No. 37 at 10-11.  Defendant accuses Plaintiffs of attempting to "diminish their skills and the services they provided at ETC" by making a "concerted effort to misconstrue their level of experience."  ECF No. 33-2 at 21.

In conclusion, Plaintiffs have submitted evidence showing that their primary duties were equivalent to those of help-desk employees, exempt from the FLSA's overtime provisions, while Defendant has submitted evidence showing that Plaintiffs performed high-level work as contemplated by the computer professional exemptions.  The parties' contradictory

declarations go to witness credibility,[15] the resolution of which is not appropriate for summary judgment.  Because there is a genuine dispute of material fact as to whether one or both of the FLSA computer employee exemptions apply to Plaintiffs, the motions for summary judgment will be denied.[16]

## III. Conclusion

For the above-stated reasons, the Court will deny the motions for summary judgment, grant Defendant's Motion for Leave to File Amended Answer, deny Plaintiffs' Motion to Strike, and grant Defendant's Motion for Leave to File Reply Memorandum in Excess of Twenty-Five Pages.  Counsel is instructed to meet and confer and then place a joint telephone call to chambers to set a trial date.  A separate order will issue.

_____/s/_____ _____
William M. Nickerson
Senior United States District Judge

DATED: August 11, 2016

_____

[15] Credibility is an issue in this case for many reasons.  First, Plaintiffs worked remotely without direct supervision.  Second, Gilmer, the individual most familiar with the nature of their work, has been sued by Defendant in Baltimore County Circuit Court, Case No. 03-C-14-011112.  Finally, the Court finds it unlikely that two employees working for different clients, living in different states, would have worked identical and exorbitant overtime hours.

[16] The parties' motions address additional issues, including the number of hours worked by Plaintiffs, whether Plaintiffs would be entitled to liquidated damages, and the relevant statute of limitations.  Deliberation on these issues need not precede a determination that Defendant is, in fact, liable.