IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYNE ALLEN et al.          *
                            *
    Plaintiffs              *
v.                          *
                            *    Civil Action No. WMN-14-4033
ENABLING TECHNOLOGIES CORP. *
                            *
    Defendant               *

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Plaintiffs Wayne Allen and Howard Cable filed this action on December 30, 2014, against their former employer, Defendant Enabling Technologies Inc., alleging violations of the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq., and the Maryland Wage and Hour Law (MWHL), Md. Code Ann., Lab. & Empl. §§ 3-401 et seq.  On or about September 9, 2016, the parties reached a settlement of Plaintiffs' claims whereby Defendant agreed to settle those claims for a total of $129,611.00, $69,902.00 to Plaintiff Allen and $60,609.00 to Plaintiff Cable.  The parties were unable to reach an agreement as to attorney's fees but did stipulate in the settlement agreement that Plaintiffs were the "prevailing parties" for purposes of entitlement to an award of attorney's fees under the FLSA and MWHL.  Defendant reserved the right, however, to challenge the reasonableness of those fees.  Before the Court is Plaintiffs' fee petition, ECF No. 51, which is fully briefed.

The parties are in agreement that, under § 216(b) of the FLSA, the award of attorney's fees and costs to the prevailing plaintiff is mandatory. 29 U.S.C § 216(b). Thus, Plaintiffs are entitled to some award of fees. "The amount of the attorney's fees, however, is within the sound discretion of the trial court." Burnley v. Short, 730 F.2d 136, 141 (4th Cir. 1984).

In the exercise of that discretion, courts have found that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). This approach is commonly known as the "lodestar" method. Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008). In deciding what constitutes a "reasonable" number of hours and a "reasonable" rate under this method, courts look to a number of factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between

>     attorney and client; and (12) attorneys' fees awards
>     in similar cases.

<u>Barber v. Kimbrell's Inc.</u>, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the twelve factors set forth in <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974)).  These factors are frequently referred to as the <u>Johnson</u> factors.

Based upon their own calculations using this lodestar method, Plaintiffs have asked for the award of $179,619.00 in fees.  Plaintiffs assert that 475.66 hours were reasonably expended by their attorneys and other professional at billing rates ranging from $475.00 an hour for lead counsel, Philip Zipin, to $135.00 for paralegals and a law clerk.  These billing rates are consistent with accepted rates set forth in this Court's Local Rules.  Md. Local Rules, App. B(3).

In supporting the reasonableness of the number of hours spent and the resulting fees under the <u>Johnson</u> factors, Mr. Zipin particularly highlights the eighth factor, the "results obtained."  Mr. Zipin posits that the fact that he was able to obtain "outstanding results" for his clients is "the obvious and most salient fact in the Court's determination regarding the Fee Petition," ECF No. 63 at 8, noting that, in his years of practice representing hundreds of employees in overtime cases, he could not recall a single instance of a larger recovery for overtime wages on behalf of only two individuals.  ECF No. 51 at

11. Mr. Zipin also highlights, appropriately, his extensive experience in employment cases, specifically overtime cases.

In challenging the fee petition, Defendant raises five arguments as to why the requested fees should be significantly reduced: 1) the time and labor devoted to this matter was unnecessary; 2) the settlement payment was much less than the claimed amount in controversy; 3) since the amount in controversy was significant, charging attorney's fees in excess of the results obtained for Plaintiffs constitutes a violation of Mr. Zipin's ethical obligations; 4) Mr. Zipin's fees include over-billing in the form of high hourly rate lawyers doing basic legal research, redundant charges, and excessive preparation time; and 5) Mr. Zipin failed to comply with Appendix B of the Local Rules of the U.S. District Court for the District of Maryland by failing to submit quarterly statements.

In arguing that much of the time spent on this case was unnecessary, Defendant runs through the two-year history of this litigation and points to various stages where Defendant believes the case should have or could have been settled.  Defendant suggests that while Plaintiffs initially offered to arbitrate this case in November of 2015, that offer proved to be disingenuous and was inconsistent with Plaintiffs' insistence that the parties go forward with discovery before that arbitration.  The Court recognizes, however, that Plaintiffs

were not compelled to forgo discovery and submit to arbitration, and there is no certainty that arbitration would have resolved Plaintiffs' claims.

Defendant asserts that Plaintiffs' motions practice resulted in unnecessary attorney's fees of more than $54,000.00 Plaintiffs filed a motion for summary judgment, moved to strike Defendant's Reply memorandum on the ground that the Reply exceeded the page limit set out in this Court's Local Rules, and also opposed Defendant's motion for leave to amend its answer. Both of Plaintiffs' motions were denied and Defendant's motion was granted over Plaintiffs' objection.

The Court agrees that this motions practice was of marginal value. As the Court noted in denying Plaintiffs' summary judgment motion, there were clear disputes of fact as to whether Plaintiffs were exempt employees and the resolution of those disputes would turn on the credibility of witnesses. See ECF No. 44 at 21-22. Plaintiffs' opposition to Defendant's motion to amend its answer to assert the "Computer Employee Exemption Defense" was, as the Court also noted, putting form over substance. Id. at 9.

The primary focus, however, of Defendant's argument that the time and labor devoted to this matter was unnecessary is Defendant's contention that Mr. Zipin knew, or should have known, that Plaintiffs grossly inflated the number of hours that

5

they allegedly worked.  The Complaint alleges that Plaintiffs were paid a salary based on a regular 40 hour work week but also alleges that, every 4 to 6 weeks, they were "on call" which involved being available to troubleshoot from 5 p.m. to 7:30 a.m. on weekdays and 24 hours a day on weekends.  ECF No. 1, ¶¶ 9, 10.  Plaintiffs also allege in the Complaint that "[t]hroughout their employment with Defendant, Plaintiffs typically and customarily worked approximately sixty (60) hours per week, on average," id. ¶ 11, without specifying if that 60 hour average was for all weeks or just on-call weeks.

Defendant theorizes that Plaintiffs' original allegation only referred to on-call weeks, but, once they discovered that Defendant maintained no records of time worked, Plaintiffs and Plaintiffs' counsel adopted the position that 60 hours per week was the estimate for hours worked for all weeks.  To support that 60 hour average, Plaintiffs asserted that they worked about 50 hours on "Regular Weeks," and 92 hours on "On-call Weeks."  Defendant posits that Mr. Zipin's deliberate choice to advocate for this highly inflated estimate of the number of hours worked made achieving a settlement more difficult and the delay in reaching a settlement resulted in the expenditure of significant unnecessary effort, hours, and expenses.

The Court acknowledges that there are some dubious aspects to Plaintiffs' allegations of average hours worked.  In denying

6

Plaintiffs' motion for summary judgment, the Court opined that it seems "unlikely that two employees working for different clients, living in different states, would have worked identical and exorbitant overtime hours." No. 44 at 22 n.15.[1] Representations made by Plaintiffs' former supervisor, James Gilmer, in a state court case brought by Defendant against Gilmer and Plaintiff Cable also undermine Plaintiffs' current estimate of hours worked in that he stated that Plaintiffs were putting in an average of 60 hours per week "when on call." ECF No. 60-12 at 7.

While acknowledging the somewhat questionable aspects of the asserted average hours worked, the Court declines to make a factual finding in the context of ruling on a petition for attorney's fees that Plaintiffs' counsel suborned perjury. That said, accepting that Plaintiffs and Plaintiffs' counsel believe that Plaintiffs worked an average of 50 hours each normal week, and an astounding average of 92 hours each on-call week, seriously undermines the conclusion that Mr. Zipin obtained "outstanding results." Based upon the exorbitant number of hours that Plaintiffs claim to have worked and their assertion that there was no factual dispute that they were non-exempt employees, Plaintiff Cable sought an award of lost wages and

---

[1] On the other hand, the deposition testimony of both Plaintiffs provides credible explanations as to how those hours could be generated from their work assignments.

liquidated damages in the amount of $271,628.99 and Allen sought an award of lost wages and liquidated damages in the amount of $157,692.50. ECF No. 60-13. In the settlement, Plaintiff Cable received only about 22% of the amount to which he believed he was entitled and Plaintiff Allen less than 44%. While Mr. Zipin's recollection may be correct that this is the largest recovery for overtime wages on behalf of only two individuals that he has obtained, it is doubtful that he has represented clients that worked such an exorbitant number of hours, for as long as they did, without overtime pay, and as clearly non-exempt employees.

Given that Plaintiffs have identified the "results obtained" as the "obvious and most salient fact" in the Court's determination regarding the award of fees, coupled with the conclusion that much of Plaintiffs' motion practice was unnecessary or of limited value, the Court concludes that the award of attorney's fees should be reduced by 25% of that which was requested. This reduction effectively eliminates the need to address Defendant's remaining challenges to the fee petition. A 25% reduction in fees brings the fees award roughly in line with the award obtained by Plaintiffs in the settlement. It also more than covers those instances where Mr. Zipin performed work that could have been performed by a member of the team with a lower billing rate. As for Defendant's claim that Mr. Zipin

failed to comply with Appendix B of the Local Rules by submitting quarterly reports, the Court finds that he substantially complied with that rule and Defendant was well aware of the fees that were being incurred. See ECF No. 60-27 (quarterly statements dated May 29, 2015, March 28, 2016, and August 17, 2016) and ECF No. 60-13 (August 14, 2015, demand letter including attorney's fees incurred as of that date).

Plaintiffs also seek an award of an additional $5,359.50 in attorney's fees for the review of the 35-page Opposition to the Fee Petition and preparation of the Reply in further support of that Fee Petition. The Court finds these fees to be reasonable. The Court will also award the requested costs of $5,621.13 sought in the initial Petition. Those costs relate predominately to the depositions that were taken, some of which Defendant argues would have been unnecessary were the case resolved at an earlier stage by arbitration or settlement. It is not clear, however, that the case would have been resolved by those means.

A separate order consistent with the Memorandum will issue.

                                                 /s/
                                   William M. Nickerson
                                   Senior United States District Judge

DATED: April 12, 2016